We'll hear the other cases in the order in which they appear on the calendar. The first is United States v. Kessler, 23-4353. Each side will have 10 minutes. Good morning. Faye Arfa, appearing remotely for Mr. Kessler. May it please the court. I wanted to focus on the three... He was showing up in the oral. Yeah, it's a little quiet. Can we make it louder? Yes. We might be able to do that on our end. I'm not sure. Also, we can't really see that well. Can you hear me now? Yes.  I turned it up a little on the microphone. Okay. Good morning. Faye Arfa, appearing on behalf of Mr. Kessler. May it please the court. We're here because we take issue with three conditions of probation that the court imposed in this case. The court imposed a total of 45 conditions, right? 22 special conditions and 13 standard conditions. Can you start with the special condition 11? Why do you think that the word loitering is ambiguous or was ambiguous for him, given the fact that he was the one that proposed that language? Well, I don't think he personally proposed it. And then there's a question of whether he can object or he needs to object to the unconstitutionality of a condition. Now, term loitering is very overbroad. Okay. You have to loiter. But his lawyer specifically asked for it instead of something else. Well, that's why I know it was probably on the spur of the moment because a lot of times there was an objection and then they decided on loitering. But we still don't know what loitering is. If you're just standing around. Why isn't it invited error? Even if it's vague, it's invited because you asked for that word. Well, I don't think that you can invite a constitutional error. And not only that, it wasn't him. It was his lawyer. Okay. So then we're getting into ineffective assistance of counsel. But he just agreed to the conditions. I'm not sure that he invited them. But it now says, let's assume that the as the government has conceded that the changed language and the judgment is not language. It's loitering in the restroom, right? Not near the restroom, but in the restroom. Okay. So that was what was said orally, right? Yes. All right. So what's vague about it? Well, I know the word loitering in certain circumstances has been held but in others not. I mean, in California, there is similar language has been upheld in certain circumstances. Yes, but there's you have to have a state of mind. They have to be able to show something because loitering is just standing around. Well, that's exactly what they thought he can do in the bathroom, not in general. Well, he but what does that mean? What if he's waiting for a bathroom? So it's not just standing around. But it's so vague. That means anytime he goes into a bathroom, they could find him that he violated probation by loitering, loitering. There are at least three United States Supreme Court cases holding that the holding the term loitering to be vague. Okay. Not only that, you don't even need it because under he's ordered not to violate any state or federal laws. So that would include any loitering statute in California. Because they're not unconstitutionally vague. So it's you're making an argument that's inconsistent with itself. Well, but but in California, it's they've held that particular loitering with a specific intent to be constitutional. But just the term loitering, you can't loiter. I mean, that means that you could pick them up for anything. And that's what the courts have held in the past. You just can't pick you have to have some more guidance as to the term. Okay. Counsel, I guess I want to come back to something that you've said, because you've said that this was, you know, perhaps a spur of the moment kind of thing where the defendant just agreed to this. But that that wasn't the case. I thought that this was a product of negotiations between the government and the defendant. I thought that that's what had happened. Is that is that wrong? Well, I'm not sure the defendant had a lot to do with it. I believe that doesn't matter. He's represented by the lawyer. I mean, if there's an ineffective assistance issue, that's a different issue. It's not this. Well, then it's it would be the lawyer who has to has to be responsible for that. But I don't I think that in the context of what the defense counsel said was that loitering has been defined in several other statutes. So the fact that it's been defined in several other statutes. Maybe it should she should have said it loitering as defined in special in in in in other statutes. But that was what she was referring to. She did. I don't think she really meant loitering alone. I think she said, look, we don't I thought I thought she agreed to specific language. Pardon me? I thought she agreed to specific language. Well, I believe she agreed to it because there are statutes that describe loitering that that actually define loitering. So I think she was referring to the statutes that define loitering. So you already have obey all laws and statutes. So I don't know why you need the term loitering. Then I don't even know. Can I ask? I don't really understand that argument, because if it's already illegal, then why is this a problem? His liberty isn't any more restricted than it would be anyway. Well, because there's no parameters on it. There's no restrictions on the term loitering. So if if it were to say loitering under any state or federal law, that would be more. More defined. What about the credit, the the other condition that you're challenging the credit lines? Pardon me, the credit lines? Well, the credit lines have nothing to do with his charges at all. And today, everybody uses credit cards for everything. Is a credit line a credit card? I thought a credit line was sort of a separate kind of credit. But. Even so, it had this this was not a financial crime at all. So why would he be restricted in this in his credit line or credit card? I'm looking at the condition. Why would that why would why would he have to submit to that? I think the argument the argument that the government has proposed is that, you know, to prevent him from going out and getting computers and phones and things like that. I think that's the argument that they have forwarded. Well, he can he can do that without a credit line. But I think that in a new credit line, I mean, they specifically took out the provision and said he couldn't use a credit card. So apparently he can use a credit card, but he can't get a credit line. And I assume the only thing I can understand that that means is a new credit card, a different credit card. But it does seem a little disconnected from what he did. Yeah, but credit cards are connected to everything and credit lines are connected to everything. The question is, is there a reasonable relationship between a restriction on credit cards or credit lines to what he did? So I think that there was reaching. Reaching to get something, OK, we'll just do that. We'll we'll we'll add we'll restrict credit cards because somewhere along the line he may be using a telephone or something like that or whatever. So it's it's just not related to what he's doing. If he uses the credit card. Did you want to save time for rebuttal? I want to make sure you have. Yes, I do. I'm sorry. Yes. Thank you. OK, thank you. Let's hear from the government. Good morning, Your Honors. AUSA Kristen Scott on behalf of the United States. And if your honors are so inclined, I will start with the loitering provision. Actually, could you start with the credit line? Certainly. The credit line condition is reasonable. First of all, what is a credit? What what does it mean? Does it mean a new credit card? What does it mean? It's a line of credit. So it's. Well, I mean, has he ever had a line of credit? I mean, where did he get a line of credit? That's not in the record, whether he's had prior lines of credit before. Doesn't mean a credit card, even a new credit card, a new credit card, a new home equity loan, perhaps any any sort of loan line of credit that he can draw funds from. But it doesn't mean using a credit card you already had. Correct, Your Honor. But I guess I don't understand if he's already required to provide financial disclosures, he's already required to do that. Why then have this other special condition about the credit line? I guess I didn't understand the relation. He was already required to provide the financial disclosures as part of his original terms of supervised release. He went out, he committed these violations, he was able to obtain the tools to facilitate these violations. So did he do that through a credit line? Is that what happened? It's unclear from the record, but this is giving the probation officer simply one more tool in her tool belt to monitor. All right, well, if it's unclear, then it's not it's not really it can't be part of the rationale here then. The court has considered the entirety of the record. What I meant by unclear in the record is it's not clear whether he actually bought the car, the screwdrivers to drill the holes in the bathroom walls, etc., with a credit card. But looking at the case as a whole, we know that he was able to obtain a computer in the underlying offense. He was able to buy a cell phone while on supervised release, which he did use to view images. But on top of everything else, this wouldn't stop him from doing that as long as he did it with a credit card he already had, as opposed to a new one. That is true, Your Honor. He is required to report those financial disclosures. So we have no new lines of credit. We also have probation being able to inquire about his finances. So hand in hand, they sort of lock down a little more than just inquiring about his current finances. But if the real goal, you were starting to say, is the phone and the computer to view images, there are also all these other provisions, like 17, which is that internet must be approved, and 18, that you can search his data, and 19, that's internet-connected devices, and 20, which is no new phones. So why do you need this credit line thing? Those conditions, I believe, were originally part of his original terms of supervised release, and yet he was still able to go out and facilitate these violations, both exposing himself at restrooms, obtaining the tools, and the gas, and the vehicle to go to these public restrooms. Do you concede that maybe you really didn't need this? Do you really? I mean, are you going to die on this hill? Your Honor, probation requested it. Probation indicated that it was something that they enforce through credit lines, not necessarily credit purchases. The condition was rationally finances. We're not asking him to report every single purchase, purchase that Walmart of a bottle of water, or a bag of chips. We're simply asking. But you would need that to get a screwdriver, or a hammer, or whatever the tool was. I mean, the credit line is not going to stop him from drilling a hole in a bathroom wall, and you already have all of these computer restrictions, so it's very hard to understand what this is doing. It is, again, providing probation with just another tool to sort of And this was the district court thoughtfully and carefully crafting the conditions. It discussed the condition on the record with Mr. Kessler's counsel. It removed the portion of the condition that Mr. Kessler's counsel objected to, and the focus of their memo objecting to the condition, and the focus of the sentencing hearing objection orally. But particularly by removing what he removed, which was new credit card charges, new credit charges, it made the whole thing kind of even more pointless, because as I say, it didn't stop him from using his credit card to buy things. That is true, Your Honor. It did not. And you started to explain that this credit line would stop him from getting a home loan. So is there any rationale for stopping him from getting a home loan? I would submit that a home loan is a type of a line of credit. Yes, but is there any reason that is connected to his crime that would justify stopping her from getting a home loan? We're looking at the crime as the totality of the circumstances, the case in whole, going all the way back to his original offense, him purchasing the computer secretly, him continuing to go on to AOL secretly. Right, but you just explained that this would stop him from getting a home loan, and there's no reason to do that. That I'm not currently aware of his personal situation, personal financial situation. But there's nothing connected to his crime that would make it appropriate to stop her from getting a home loan. That is simply one line of credit. I was using that as an example. I'm sorry, what? Oh, that's simply one example of a line of credit. Right, exactly. So this would stop him from getting a home loan. I believe the condition, if I refer to the record, looks like it was originally without the approval of the probation officer. Right, so if he feels that the condition is too onerous, if he's looking to get a home loan, he has reasonable redress through the court where he can petition the court and seek clarity from the court and permission from the court if he feels the probation is being unreasonable and preventing him from getting a home loan. Okay. If there are no further questions on that, would your honors like me to address the loitering condition? Yes. Thank you. We're asking the court to take a common sense, practical, and reasonable point of view here in the imposition of this condition. It is common lexicon, the word loitering at this point. A reasonable person would know what loitering means, right? You just talked with Ms. Arfa about him standing in line to go to the restroom, him being in the restroom, right, using the restroom. That's not loitering. We concede to that. What loitering is, is hanging out in a restroom with no intent or purpose, and I believe in my brief I submitted the definition under Black's Law Dictionary. There's also the California Penal Code definition of loitering. What do we do with the fact that he didn't object to the loitering language? He did not object, so that is where the government argues first and foremost that he is barred from contesting it under invited error. He proposed, or his attorney, proposed the word loitering. It was actually discussed at a meet and confer with counsel prior to the sentencing hearing. It was included in the United States dispositional memo, I believe, where the United States proposed two different terms after discussing with defense counsel what may be appropriate, and one of those was no loitering at public restrooms. That was the term ultimately that the court went with and that defense ultimately conceded to. On ER 14, actually, the defense says the term loitering is clear and her client can understand it. So where he introduced the term, where he put this into motion, he now challenges that very term, and we asked the court to bar that challenge on invited error. If he now thinks that's an effective assistance of counsel, how would he raise that? He's not raised that yet, and he did have a plea agreement where he had a waiver of collateral attack, which included an effective assistance of counsel, and I believe that is part of the record. But you agree that the actual judgment should be reversed because he put additional words in which might, in fact, aside from not being what the language was, they may in fact be problematical. We do concede that, and that is why we agree with the defense that the judgment should at least be remanded to the district court to clarify, make its written judgment in line with its oral pronouncement. Yes, so there is no confusion. Could the district court change it again on remand, or is the remand simply to implement what he said orally? I believe it would be limited to this issue of reconciling the oral pronouncement with the written judgment. If there are no further questions, your honors, the United States would submit on its filings. Thank you, counsel. Thank you. I think we have a little more than a minute for rebuttal. Yes, I just wanted to point out that, number one, there's really no relation. It's very remote, the credit card condition, line of credit condition to what happened. It's very remote. Like I said, he has 45 conditions of probation that he has to deal with. And then secondly, as far as the loitering is, I'm just saying, suppose he just needs a place to stay in a bathroom. That's what he can't do. Pardon me? That is what he cannot do. Well, what if he just wants to, he needs a shelter or something, and he needs to go in there and hang out and eventually going to go to the bathroom. I don't know. But he wasn't loitering. He was in, the facts of the probation violation is, he was in there doing something wrong. That's what got him in trouble. It wasn't standing there. Loitering, even if we know what loitering is, loitering alone is not a crime. You can loiter. You loiter on the street. And I think there are all these Supreme Court cases that say that it's unconstitutional just to criminalize loitering, because then you can arrest anybody for doing anything. So let's say he just walks in the bathroom. Given his history of doing things in bathrooms that one shouldn't do in bathrooms of various kinds, keeping him out of the bathroom, except when he has to go to the bathroom, seems fairly benign. Yeah, but including to sleep or anything else. Well, but, but the point is, it's too, it's too vague. They could arrest him for, so then there can, so it's essentially saying you can't go into a public restroom. Then we don't even know what a public restroom is. I mean, is it a public restroom if it's on private property? Is it a public restroom if it's open to the public? I don't know. It's just, it's just very a confusing condition. They will get him if he's in the bathroom. Sorry, you're over your time. Thank you. I think we have your argument. Thank you both sides for the helpful arguments. Thank you. This case is submitted. Thank you. Bye-bye.
judges: BERZON, FRIEDLAND, MENDOZA